IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
MIDLAND/ODESSA DIVISION

| | |
|---|---|
| BENNY BENAVIDEZ, §<br>    *Plaintiff*, §<br>§<br>v.   §   No. MO:20-CV-249-DC<br>§<br>OIL PATCH GROUP, INC.   §<br>    *Defendant*.   § | |

### ORDER ADOPTING REPORT AND RECOMMENDATION
### OF THE UNITED STATES MAGISTRATE JUDGE

Plaintiff Benny Benavidez ("Plaintiff") filed this action pursuant to the Fair Labor Standards Act ("FLSA"), alleging that Defendant Oil Patch Group, Inc. ("Defendant") failed to pay him overtime wages while using a Ford F-250 without a trailer commuting to work, running local errands, and/or picking up co-workers. (Doc. 1). The issue before the Court is whether these activities affect the safety of operation of vehicles with a Gross Vehicle Weight Rating ("GVWR") and Combined Gross Vehicle Weight Rating under 10,000 pounds (i.e., small vehicles) in transportation on public highways in "interstate or foreign commerce" to invoke coverage under the Technical Corrections Act ("TCA"). This case was referred to United States Magistrate Judge Ronald C. Griffin pursuant to 28 U.S.C. § 636(b).

This Order concerns Defendant's motion for summary judgment (Doc. 30) and Plaintiff's cross-motion for summary judgment (Doc. 32). On March 11, 2022, the Magistrate Judge issued a report recommending that Defendant's motion be granted (Doc. 58) and that Plaintiff's motion be denied as moot (Doc. 59). Plaintiff timely filed written objections. (Docs. 60, 61). Defendant subsequently responded to Plaintiff's objections. (Docs. 62, 63). The Court reviews the objected-to portions of a magistrate judge's report and recommendation de novo. *See* Fed. R. Civ. P. 72(b)(3); 28 U.S.C. § 636(b)(1).

1

## I. LEGAL STANDARD

The TCA narrowed the employees who are covered by the FLSA, and excepted from the Motor Carrier Act ("MCA") exemption, to those "whose work, in whole or in part," affects "the safety and operation of motor vehicles weighing 10,000 pounds or less in transportation on public highways in interstate or foreign commerce[.]" SAFETEA-LU Technical Corrections Act of 2008, Pub. L. No. 110–244, § 306(a), (c), 122 Stat. 1572, 1621 (June 6, 2008); *Carley v. Crest Pumping Technologies, L.L.C.*, 890 F.3d 575, 579 (5th Cir. 2018) (the TCA designates "a class of employees to which the MCA exemption does not apply"). In other words, the MCA exempts certain employees from being covered under the FLSA. The TCA further excepts some employees from the MCA exemption, returning them to coverage under the FLSA.

It is plaintiff's burden to establish that he is entitled to the TCA exception to the MCA exemption, including showing that he worked on a TCA-eligible vehicle, and that he did so on more than a *de minimis* basis. *Carley*, 890 F.3d at 579–80. Further, plaintiff is required to establish the applicability of the TCA on a weekly basis. *See, e.g., Spangler v. Mourik, L.P.*, No. CV H–16–0349, 2017 WL 3412117, at *16 (S.D. Tex. Aug. 8, 2017).

It is undisputed Plaintiff drove commercial motor vehicles with a GVWR exceeding 10,000 pounds in interstate commerce. Therefore, to trigger the TCA exception to the MCA exemption, Plaintiff must establish he used a small vehicle in interstate or foreign commerce on more than a *de minimis* basis and for each challenged workweek.

## II. DISCUSSION

Plaintiff objects to the Magistrate Judge's recommendation that Defendant's motion for summary judgment should be granted for the following reasons: (1) Plaintiff allegedly operated his F-250 without a trailer during each week at issue for more than a *de minimis* amount of time;

(2) the FLSA's broad definition of "commerce" should supersede the MCA's definition of "interstate or foreign commerce," as applied to the TCA; and (3) Plaintiff purportedly affected the safety of operation of small vehicles in interstate commerce.  For the reasons that follow, the Court agrees with the Magistrate Judge that based on the summary judgment record, Plaintiff cannot meet his burden to establish the TCA exception.

**A.     Gross Vehicular Weight Rating ("GVWR") of Plaintiff's Vehicle**

The parties agree and the Magistrate Judge recognized that driving the F-250 without a trailer is operating a vehicle with a GVWR of 10,000 pounds or less.  Plaintiff contests that Defendant failed to pay him in compliance with the FLSA for fifteen workweeks.  The Magistrate Judge found that Plaintiff failed to raise a fact question regarding whether he drove the F-250 without a trailer during workweeks 1, 2, 13, 16, 18 through 23, 26 through 29, and 31. (Doc. 58 at 12–13).

Plaintiff admitted in his deposition that he had no documents or information regarding what vehicle he drove on any day, whether at any time the vehicle he was driving did or did not have a trailer, or whether Plaintiff ever drove an F-250 truck without a trailer.  (Doc. 30 at 17) (quoting Plaintiff's Depo. at 320:17-321:1, 321:10-322:7; 322:25-323:16).  The summary judgment evidence shows Plaintiff pulled gooseneck trailers using an F-250 or an F-350 to haul loads to or from locations.  (Doc. 30 at 18).  Plaintiff's supervisors testified there was no reason for Plaintiff—a licensed CDL driver making over $95,000.00 a year—to make runs to and from customer wellsites without towing a trailer.  (*Id*.).

Defendant admits "Plaintiff might have used the F-250 to run 'little errands' on September 18, 2019, September 20, 2019, September 26, 2019, September 30, 2019, October 7,

3

2019, October 11, 2019, October 28, 2019, and February 18, 2020." (Doc. 30 at 18 n. 57) (citing Docs. 31-25; 31-26). Plaintiff's supervisor, Danny Armour further testified as follows:

> Q. (BY MR. MILTENBERGER) So some weeks he drove the company F-250 without a trailer to perform company duties; but we don't know when and how often, do we?
>
> MR. LOMBARDINO: Objection, form.
>
> A. You're going to speculate. We doing – talking about dispatching times or we talking about while he's...
>
> Q. (BY MR. MILTENBERGER) Let's stay with dispatching time right now.
>
> A. Dispatching times. He used the truck to get required parts for his maintenance for his DOT certs on his trucks, and then he would use – he'd take – like get his truck maintenanced.
>
> Q. But we don't know how often he would do that, do we?
>
> A. His credit card receipts would tell us any time he ran an errand as the dispatcher.

(Doc. 33-4 at 54–55) (Armour Depo. at 17:10–18:2) (Doc. 33-2 ¶ 10).

Plaintiff further argues that the "credit card receipts show Benavidez bought parts/supplies on September 18, 20, 22, 24, 26, 30 [2019], October 3, 7, 14, 28 [2019], January 10, 13 [2020], and February 18 [2020]." (Doc. 33 at 7) (citing Doc. 33-2 ¶ 11). In his declaration,[1] Plaintiff states he used the F-250 without a trailer to purchase these parts. (Doc. 33-2 ¶ 12). Plaintiff contends Defendant's management testified that the fuel card records are also documents that would show when Benavidez drove the F-250. (Doc. 33-2 at 5). Plaintiff's counsel asked Mr. Armour "Are there any documents that show you he was driving the Ford F-

---

[1] Declarations supporting summary judgment "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). Conclusory assertions in a declaration are not competent evidence. *See Roach v. Allstate Indem. Co.*, 476 F. App'x 778, 780 (5th Cir. 2012) (citing *S.E.C. v. Recile*, 10 F.3d 1093, 1097 (5th Cir. 1993)); Fed. R. Evid. 602.

4

250 on those couple of hours?" Mr. Armour responded: "Yeah, his credit card statements, fuel card statements, yes." (Armour Depo. at 15:8–11; Doc. 33-4 at 52).

The fuel card records show Plaintiff "bought fuel for the F-250 on August 25, 27, 29 [2019], September 2, 3, 4, 5, 6, 7, 8, 11, 13, 14, 15, 20, 23, 24, 26, 29, 30 [2019], October 2, 3, 7, 9, 10, 11, 27, 29. 31 [2019], November 3, 19 [2019]." (Doc. 33 at 7) (citing Doc. 33-2 ¶ 13). Plaintiff cites his own declaration to substantiate his statement that "[w]hen driving the F-250, Benavidez was not pulling a trailer." (*Id.*) (citing Doc. 33-2 ¶ 13). Plaintiff points to testimony from Mr. Armour wherein he testifies that when employed as a dispatcher Plaintiff would drive the F-250 without a trailer "to go get parts" and "to pick up a driver" who was broken down. (Armour Depo. at 120:1–12; Doc. 33-4 at 59).

Mr. Armour testified that Plaintiff drove the F-250 without a trailer while working as a dispatcher "to get required parts for his maintenance for his DOT certs on his trucks, and then he would use – he'd take – like get his truck maintenanced." (Armour Depo. at 17:10–22; Doc. 33-4 at 54). Further, Mr. Armour testified that Plaintiff purchasing parts for DOT vehicles was important, because it was one of his job responsibilities as a dispatcher to make sure Defendant's DOT vehicles operated safely in interstate commerce. (Armour Depo. at 115:8–21; Doc. 33-4 at 57). Thus, Plaintiff "drove the F-250 without a trailer on public highways to perform some of his work." (Doc. 33 at 7–8) (citing Doc. 33-2 ¶ 9).

Plaintiff also states in his declaration that he performed work duties while driving the F-250 such as "traveling to and from Defendant's customers' well sites in Texas, New Mexico, North Dakota and other states to pick up or deliver equipment, taking or picking up other drivers who had driven an OPG truck to a repair shop and left it there for repairs or were picking it up, picking up other drivers whose trucks were broken down away from the yard, and running

general errands for OPG." (Doc. 33 at 19) (citing Doc. 33-3 ¶¶ 11, 14, 16, 19).  Plaintiff's general statements without evidence of dates, length of trips, purposes, destinations, or any other details regarding this purported traveling is insufficient to meet Plaintiff's burden.

In *Rychorcewicz v. Welltec, Inc.,* 768 F. App'x 252, 256–57 (5th Cir. 2019), the United States Court of Appeals for the Fifth Circuit affirmed a district court's ruling that the plaintiffs' use of vehicles under 10,000 pounds was *de minimis* because they "only occasionally drove personal and rental vehicles."  768 F. App'x at 256.  Here, as in *Rychorcewicz*, Plaintiff has not met his burden.  Thus, Plaintiff has failed to establish the applicability of the TCA exception on a week-by-week basis.

Plaintiff's objections proffer nothing more than self-serving and conclusory assertions to support his argument.  (Doc. 60 at 8).  He provides no records, discrete examples or any other specific evidence to support his objections that the Magistrate Judge did not already consider.  Instead, Plaintiff relies upon two unsubstantiated allegations in his second declaration merely stating he drove the F-250 but not whether this driving occurred as a part of his work duties.  (Doc. 60 at 10) (citing Doc. No. 33-3 ¶¶ 10, 15) ("The total time I spent driving a Ford F-250 (without a trailer attached) each week I drove it was at the very least two hours and much more in most weeks."; "Although I do not know the specifics of each trip, I drove the F-250 without a trailer regularly, each week during my entire employment with OPG."); (Doc. 33-3 ¶ 7) ("While I was a Dispatcher I drove the Ford F-250 without a trailer on a daily basis, including driving it to and from my residence.").

The Magistrate Judge correctly found Plaintiff's "non-specific ambiguous" declarations (which present no dates, lengths of trips, specific purpose, specific destination, specific customers nor any other specific details regarding any of the alleged trips) insufficient to meet

6

Plaintiff's burden of raising a genuine issue of material fact. (Doc. 58 at 12). Contrary to Plaintiff's objections, the Magistrate Judge considered the summary judgment evidence and found that Plaintiff's evidence did not meet his burden to establish the applicability of the TCA exception as to workweeks 1 through 2, 13, 16, 18 through 23, 26 through 29, and 31. Accordingly, the Court **OVERRULES** Plaintiff's objections and **ADOPTS** the Magistrate Judge's finding that Plaintiff has not met his burden under the TCA to raise a fact question as to whether he drove the F-250 without a trailer during workweeks 1 through 2, 13, 16, 18 through 23, 26 through 29, and 31 of his employment. Therefore, Defendant's Motion for Summary Judgment is **GRANTED** on this ground.

**B.     The MCA Definition of "Interstate or Foreign Commerce" Applies to the TCA**

Next, Plaintiff objects to the Magistrate Judge's determination that Plaintiff did not operate a vehicle weighing 10,000 pounds or less in interstate or foreign commerce. The TCA exception does not delineate what definition Congress intended for the term "interstate or foreign commerce." Pub. L. No. 110–244, § 306(c)(2)(B) ("as affecting the safety of operation of motor vehicles weighing 10,000 pounds or less in transportation on public highways in interstate or foreign commerce"). Plaintiff argues the FLSA's definition of "commerce"[2] applies. (Doc. 33 at 8–14). Defendant argues that the MCA exemption's definition is operative. (Doc. 30 at 18–22).

To prevail on a claim under the FLSA, a plaintiff must prove, in part, by a preponderance of the evidence the essential element that plaintiff was engaged in commerce or in the production of goods for commerce or employed by an enterprise engaged in commerce or in the production of goods for commerce that had gross annual sales of at least $500,000.00 for the specific year at

---

[2] "Commerce" in the FLSA is defined to "mean[] trade, commerce, transportation, transmission, or communication among the several States or between any State and any place outside thereof." 29 U.S.C. § 203(b).

issue. The term "commerce" under the FLSA has a very broad meaning. It includes any trade, transportation, transmission, or communication among the several states, or between any state and any place outside that state.

In contrast to the FLSA's use of the word "commerce," the MCA and TCA speak in terms of "interstate or foreign commerce." As the Magistrate Judge explained, "if the Court were to apply Plaintiff's proposed definition of interstate commerce, the Court would in essence be reading § 306(c)(2)(B) of the TCA exception so that much of the language is superfluous." (Doc. 58 at 24). Such an interpretation would violate a cardinal principle of statutory construction.[3] To read the FLSA's definition of "commerce" into the TCA would nullify the words "on public highways in interstate or foreign," in contravention of Congress's intent based on the unambiguous statutory language.[4]

If Congress had intended for the FLSA's definition of "commerce" to apply, the TCA would track the language used in the FLSA or simply say "transportation in *commerce*" instead of "transportation on public highways in interstate or foreign commerce." But it does not. Instead, the TCA uses the exact same "interstate or foreign commerce" language in the MCA. As the Magistrate Judge explained, "if Congress had intended for courts to read the TCA's interstate commerce requirement as mirroring the 'interstate commerce' definition of the FLSA, then there is no reason why Congress would have written § 306(c)(2)(B) to so closely track the MCA's interstate commerce definition."

While the United States Court of Appeals for the Fifth Circuit in *Carley v. Crest Pumping Techs., L.L.C.*, 890 F.3d 575, 579 (5th Cir. 2018),[5] looked to the FLSA to determine whether the

---

[3] *TRW Inc. v. Andrews*, 534 U.S. 19, 31 (2001).
[4] The Court rejects Plaintiff's invitation to follow the holding in *Noll v. Flowers Foods, Inc.*, 478 F. Supp. 3d 59, 63 (D. Me. 2020) since it would render the words "interstate or foreign" superfluous.
[5] *See Carley*, 890 F.3d at 579 ("The text of the Corrections Act does not clearly allocate the burden of pro[of]").

employer or the employee had the burden to prove the TCA exception to the MCA exemption because the TCA's statutory text did not address that issue, *Carley* is not instructive on what definition of "interstate or foreign commerce" applies to the TCA.

The Court rejects Plaintiff's proffered construction of the TCA exception, which would adopt the FLSA's broad definition of "commerce" to include any operation of a small vehicle as overtime-eligible work, even if wholly unrelated to "interstate or foreign commerce," as required by the TCA. Such an exception would engulf the MCA exemption in that any operation of a small vehicle intrastate would trigger the TCA, and thus, FLSA overtime requirements.

Employees exempt under the MCA are regulated by the Department of Transportation ("DOT") whereas employees subject to overtime under the FLSA are regulated by the Department of Labor ("DOL"). Dividing jurisdiction over the same employees between the DOT and DOL, with the result that their employer would be regulated under the FLSA when they are running local, intrastate errands in small vehicles and under the MCA when they attach trailers to these same vehicles for transportation on public highways in interstate or foreign commerce would require burdensome record keeping, create confusion, and give rise to mistakes and disputes by putting employers in the untenable position of policing their CDL drivers' every move. This is not the law. DOL or DOT jurisdiction applies on an either-or basis, is mutually exclusive, and there is no concurrent jurisdiction of both the FLSA and MCA.[6]

"The preeminent canon of statutory interpretation requires [the court] to 'presume [the] legislature says in a statute what it means and means in a statute what it says.'" *BedRoc Ltd. v.*

---

[6] *Morris v. McComb*, 332 U.S. 422, 437–38 (1947) ("Having determined that . . . these drivers . . , [fall] under . . . the Motor Carrier Act, the question recurs as to whether, in the face of the exemption stated in . . . the Fair Labor Standards Act, the requirements of . . . that Act nevertheless apply to these employees. This issue as to the possible reconciliation of the language of these Acts so as to provide for concurrent jurisdiction was considered at length . . . and the conclusion was . . . reached that such a construction was not permissible."); *Albanil v. Coast 2 Coast, Inc.*, 2010 U.S. Dist. LEXIS 32666, at *17 (S.D. Tex. Mar. 31, 2010) (noting that "the DOL's and the DOT's jurisdiction are mutually exclusive."), *aff'd* 444 F. App'x 788 (5th Cir. 2011).

*United States*, 541 U.S. 176, 183 (2004).  Accordingly, the Court applies the text of the statute as written.  Under the presumption of consistent usage, "a term generally means the same thing each time it is used."  *United States v. Castleman*, 572 U.S. 157, 174 (2014) (Scalia, J., concurring).  The presumption is particularly pertinent where, as here, "Congress uses the same language in two statutes having similar purposes."  *Smith v. City of Jackson*, 544 U.S. 228, 233 (2005) (plurality opinion).  The "interstate or foreign commerce" language in the MCA and TCA is the same and has a similar purpose: to determine if an employee is exempt from (under the MCA) or eligible for (under the TCA) overtime under the FLSA.

The TCA's language tracks the MCA's language.  The MCA exemption applies if an employee's activities affect the safety or operation of commercial motor vehicles in the transportation on "public highways . . . in interstate or foreign commerce[.]" 29 C.F.R. § 782.2.  To be a "covered employee" under the TCA exception, the employee's work must affect the "safety of operation of motor vehicles weighing 10,000 pounds or less in transportation on public highways in interstate or foreign commerce." Pub. L. No. 110–244, § 306(c)(2)(B).  Under the prior-construction canon, a term should be understood according to prior, well-settled constructions of the same term.  *See, e.g.*, *Armstrong v. Exceptional Child*, 575 U.S. 320, 330 (2015).  Congress presumably knew of the settled judicial and administrative interpretations of "interstate or foreign commerce" under the MCA when it used the exact same wording in the TCA—which expressly amends the MCA.

Accordingly, the Magistrate Judge's application of the MCA's definition of "interstate or foreign commerce" to the TCA's "interstate or foreign commerce" requirement, as tracking the exact wording of the statute, is correct, this recommendation is **ADOPTED**, and Plaintiff's objections are **OVERRULED**.

C.  **Plaintiff Did Not Affect the Safety of Operation of Small Vehicles in Interstate or Foreign Commerce Under the TCA**

Finally, the Magistrate Judge concluded that Plaintiff did not affect the safety of operation of small vehicles in "interstate or foreign commerce" as defined by the MCA. Plaintiff contends the Magistrate Judge did not consider all the evidence in making this recommendation. However, Plaintiff ignores the record evidence supporting the Magistrate Judge's finding that Plaintiff failed to establish he drove a small vehicle in "interstate or foreign commerce" during any workweek. Plaintiff's self-serving statements are too conclusory to constitute probative evidence that a fact finder could rely upon to determine that Plaintiff was driving (1) without a trailer and (2) in interstate or foreign commerce for any workweek.

Plaintiff argues he satisfies the FLSA's commerce requirement because (1) "the parts [Plaintiff] transported on public highways were used in trucks/vehicles that transported oil field equipment across state lines" (Doc. 33 at 10) (citing Doc. 33-2 at 2, 4, 5–6); and (2) Plaintiff "used a F-250 that was manufactured out-of-state" *Id*. (citing Doc. 33-3 at ¶ 20). However, the summary judgment evidence shows Plaintiff bought parts exclusively for motor vehicles with a GVWR exceeding 10,000 pounds. (Armour Depo. at 17:10–18:2; Doc. 33-4 at 54–55). The TCA exception requires the Plaintiff's duties to affect the "safety of operation of motor vehicles weighing 10,000 pounds or less in transportation on public highways in interstate or foreign commerce." Pub. L. No. 110–244, § 306(c)(2)(B).

Plaintiff's objections are not persuasive. The report reflects the Magistrate Judge considered whether the evidence supported Plaintiff's assertion that the TCA-eligible work he allegedly performed affected the safety of operation of motor vehicles weighing 10,000 pounds or less in transportation on public highways in interstate or foreign commerce. The Magistrate Judge reviewed all the evidence but determined Plaintiff's ambiguous declaration statements

11

containing no dates, no trip lengths, no purposes for such trips, no destinations, or any other specific details regarding the alleged interstate trips, were insufficient to raise a question of fact under the TCA exception as to whether Plaintiff drove the F-250 without a trailer during these alleged trips.  (Doc. 58 at 12).  Further, the Magistrate Judge noted that fuel records alone are not proof Plaintiff operated a small vehicle with or without a trailer let alone in interstate or foreign commerce.  Plaintiff makes a logical leap from receipts evidencing fuel purchases to the conclusion that these fuel purchases relate solely to the operation of a small vehicle not pulling a trailer in "interstate or foreign commerce" for any specific workweek.

Moreover, driving to run local errands and commuting to or from work in the Midland/Odessa area does not involve transportation in interstate or foreign commerce, nor could Plaintiff have been expected to engage in safety-affecting activities as to a small vehicle that are interstate in nature while performing this intrastate transportation.  The Fifth Circuit defines "interstate commerce" as the actual transportation of goods across state lines or the intrastate transport of goods in the flow of interstate commerce.  *Songer v Dillon Res., Inc.*, 618 F.3d 467, 472 (5th Cir. 2010).  Plaintiff has no evidence that he was transporting goods in the flow of interstate commerce while running errands or commuting to and from work.  Accordingly, Plaintiff has failed to meet his burden to establish the applicability of the TCA exception.

Therefore, the Court **OVERRULES** Plaintiff's objections on this ground and **GRANTS** Defendant's Motion for Summary Judgment.

Based on the probative evidence in the record, and with all reasonable inferences drawn in Plaintiff's favor, Plaintiff cannot raise an issue of material fact as to whether he affected the safety of operation of small vehicles in interstate or foreign commerce under the TCA.  Further,

the Magistrate Judge properly recommended summary judgment be granted. *See Norman v. QES Wireline LLC,* No. 4:16-cv-02396, 2019 WL 4674957 (S.D. Tex. Aug. 30, 2019) *report and recommendation adopted* 2019 WL 4673208 (S.D. Tex. Sept. 25, 2019) (granting summary judgment where plaintiffs failed to meet their burden to establish that they fell into the TCA exception to the MCA exemption).

Reviewing the Magistrate Judge's findings de novo, the Court concludes that the Magistrate Judge correctly determined that Defendant met its burden to show the applicability of the MCA exemption to the FLSA and that, conversely, Plaintiff has not met his burden under the TCA exception to the MCA exemption.

### III. CONCLUSION

For the reasons stated above, Plaintiff's objections are **OVERRULED,** and the Report and Recommendation of the Magistrate Judge (Doc. 58) is **ADOPTED**. *See* Fed. R. Civ. P. 72(b)(3). Defendant's motion for summary judgment is **GRANTED** (Doc. 30) and Plaintiff's cross-motion for summary judgment is **DENIED**. (Doc. 32).

It is so **ORDERED**.

SIGNED this 14th day of April, 2022.

DAVID COUNTS
UNITED STATES DISTRICT JUDGE